IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANNIE WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-cv-747-RJD |
| ) | |
| CAJUN OPERATING COMPANY d/b/a ) | |
| CHURCH'S CHICKEN, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendant's Motion to Exclude Testimony of Plaintiff's Non-retained Expert Dr. Whiting (Doc. 43), to which Plaintiff filed a Response (Doc. 45) and Defendant then filed a Reply (Doc. 46). Defendant also filed a Motion for Partial Summary Judgment (Docs. 41 and 42), to which Plaintiff filed a Response (Doc 44). Defendant's Motions are GRANTED.

**Background**

Plaintiff's Complaint alleges that on February 24, 2019, she injured her left knee at a Church's Chicken restaurant when a sink in the restroom fell and struck her (Doc. 1-1, p. 2). That day, Plaintiff presented to the Emergency Room and was treated by a nurse practitioner who entered the following note:

> 53 yo female presents to the ED with complaints of a scratch to her left inner thigh after being at Church's Chicken in the bathroom when the sink came down and broke, causing it to shatter. Pt states when the sink fell, she fell backwards into the wall, not falling onto the floor. Pt denied any other injuries. Pt complains of burning to the abrasion.

(Doc. 42-2, p. 1).  Plaintiff then returned to the Emergency Room six days later, complaining of a headache, dizziness, and swelling to her left thigh (Doc. 42-3, p. 1).  She saw the same nurse practitioner who referred to the sink incident in her notes (*Id*.).  Two weeks later, Plaintiff was again seen in the Emergency Room, complaining of back and shoulder injuries related to a work incident (Doc. 43-3, p. 1).  Plaintiff underwent magnetic resonance imaging ("MRI") of her left knee in April 2019 at Touchette Hospital in Centreville, Illinois.  The report from the MRI stated "[w]ith the diffuse and extensive abnormalities which are present, determining which are acute and which are chronic is rather difficult…the osteoarthritic findings are old" (Doc. 44-1, p. 1).  The report further stated "[t]he anterior cruciate ligament is not confidently demonstrated and probably completely torn. The lateral meniscus has a normal appearance.  On the medial side, there is diffuse involvement with a complex tear." (*Id*.).

Plaintiff disclosed Dr. Jeffrey B. Whiting as an expert in this matter, representing that Dr. Whiting had treated her and would "offer expert opinions on the medical care and treatment of Plaintiff's injuries caused by the negligent acts or omissions of the Defendant" and "expert opinions on the causation of Plaintiff's injuries" (Doc. 42-7, p. 1, 2).  Dr. Whiting is a board-certified orthopedic surgeon who practices at St. Mary's Hospital in Clayton, Missouri and at a St. Louis University clinic (Doc. 46-1, p. 5, 6, 8).  Plaintiff did not disclose any other experts.

Plaintiff's counsel deposed Dr. Whiting on June 23, 2021 (Doc. 46-1, p. 1).  Plaintiff's counsel presented a radiology report to Dr. Whiting that indicated Plaintiff had moderate to severe osteoarthritis in her left knee in September 2016 (Doc. 46-1, p. 11-13).  Dr. Whiting testified that he started treating Plaintiff at some point after September 2016 (Doc. 46-1, pp. 12, 13).  He initially recommended conservative treatment for her arthritis (Doc. 46-1, p. 13-15).

Following the sink incident at Church's Chicken in February 2019, Dr. Whiting saw

Plaintiff on June 4, 2019 (Doc. 46-1, p. 16). He testified that his diagnosis for her that day was osteoarthritis of the left knee (Doc. 46-1, p. 18). His notes do not mention the sink incident or whether he was aware of any injury to Plaintiff's ACL or meniscus (Doc. 46-1, p. 18, 19). He testified that the sink incident "wasn't reported to [him]." (Doc. 46-1, p. 77). He did not order the April 2019 MRI of Plaintiff's left knee (Doc. 45-1, p. 1). It is unclear from Dr. Whiting's deposition whether he reviewed the April 2019 MRI report at any point prior to the date of his deposition, though he testified that he reviewed it before "coming" to the deposition (Doc. 46-1, p. 15).

Plaintiff's counsel presented a therapy record to Dr. Whiting dated June 25, 2019 (Doc. 46-1, p. 19). The therapist noted that Plaintiff reported she had "injured her left knee when a bathroom vanity fell on her February 14th" (Doc. 46-1, p. 20) Plaintiff's counsel then asked Dr. Whiting "[w]ould it be fair to say your opinion within a reasonable degree of medical certainty is that the injury that [Plaintiff] suffered on February 14th of 2019 is an aggravation of her preexisting condition?" (Doc. 46-1, p. 21). Dr. Whiting responded "correct." (*Id.*). Defense counsel objected to the form and foundation of the question.

On December 23, 2019, Plaintiff underwent total left knee replacement surgery performed by Dr. Whiting. (Doc. 46-1, p. 24-25). Dr. Whiting gave the following testimony regarding his diagnosis of Plaintiff's condition on that date:

>| Plaintiff's counsel: | And what was your diagnosis that day on 12/23 of '19? |
>| Dr. Whiting: | It was severe arthritis of the left knee. |
>| Plaintiff's counsel: | Okay. And was your diagnosis also that she had suffered from an ACL tear and a meniscus tear? |
>| Dr. Whiting: | I don't have anything in the note that documented it. |

| | |
|---|---|
| Plaintiff's counsel: | Okay. After you had reviewed the MRI of 4/22 of 2019 showing that she had suffered from an ACL tear and meniscus tear, would this procedure have been necessary? |
| Dr. Whiting: | Yeah. We typically do the—the knee replacement is typically for arthritis. And so she—we—you know, that's—she definitely had arthritis of the knee. |
| Plaintiff's counsel: | Okay. Well, what role, if any, did the ACL tear and meniscus tear play in, you know, having a total knee replacement? |
| Dr. Whiting: | Honestly, I hadn't—I don't know if I had even seen that. But it would—it really wouldn't change the procedure at all honestly. It's—you know, the procedure's basically the same, because we take the ACL out when we do the knee replacement. But it definitely could be, you know, a part of having osteoarthritis of the knee. |
| Plaintiff's counsel: | Okay. And so your opinion based on a reasonable degree of medical certainty would be that the fall in February of 2019 aggravated her osteoarthritis condition? |
| Dr. Whiting: | Definitely it can, it can aggravate, yes. |

(Doc. 46-1, p. 26-28).

Dr. Whiting testified that he never diagnosed Plaintiff's ACL or meniscus injuries (Doc. 46-1, p. 40). Plaintiff's counsel asked "[s]o within a reasonable degree of medical certainty it's your medical opinion that the torn ACL and the torn meniscus was caused by her fall or her jumping back on 2/14 of 2019?" (*Id.*). Dr. Whiting replied, "Again, I didn't---I don't think she reported that to me, but looking at the –it is reported on the MRI report, yes" (Doc. 46-1, p. 41).

On cross-examination, counsel for Defendant asked "you can't say with any reasonable degree of medical certainty that Plaintiff's alleged incident at Church's exacerbated or aggravated any condition she had, can you?" Dr. Whiting replied "I was not told about the incident." (Doc. 46-1, p. 66). Later, counsel for Defendant again asked "you can't say that she sustained any aggravation or exacerbation of her longstanding severe osteoarthritis to her left knee from the

incident at Church's can you?" (Doc. 46-1, p. 72).   Dr. Whiting replied "Yeah, she did not report it to me" (*Id.*).

On re-direct and re-cross and another re-direct, Plaintiff's counsel and Defendant's attorney continued to ask Dr. Whiting whether it was his opinion that the sink incident exacerbated Plaintiff's osteoarthritis (Doc. 46-1, p. 75, 77, 78). Dr. Whiting continued to answer that "it can" and "it wasn't reported to me" (*Id.*).   Finally, on a second re-cross, Defendant's attorney asked "[y]ou don't know anything about what actually happened, you haven't seen the MRI report[1], you don't, you never saw a torn ACL or meniscus yourself, so you can't give any opinions in this case about Ms. Williams' specific injury?"  and Dr. Whiting replied "correct" (Doc. 46-1, p. 79). Plaintiff's counsel then stated on the record "And just show my objection, it's already been asked and answered. We can—I guess we can debate that until the cows come home" (*Id.*).

**Motion to Exclude Testimony of Dr. Whiting**

This Court serves a "gatekeeping role" by ensuring that a jury only hears expert testimony if it is both reliable and relevant.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).   A witness may offer an expert opinion if certain criteria are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[1] Dr. Whiting did review the MRI report, but not the images (Doc. 43, p. 13; Doc. 46-1, p. 15).

Fed. R. Evid. 702.   It is unclear what principles and methods Dr. Whiting used to reach the opinion he gave early in his deposition "that the injury that [Plaintiff] suffered on February 14th of 2019 is an aggravation of her preexisting condition."   Clearly, Dr. Whiting did not reach any opinion regarding Plaintiff's ACL and meniscus injuries while he was treating Plaintiff, as he never diagnosed those injuries or even discussed them with Plaintiff.   At some point prior to his deposition, he reviewed some of Plaintiff's medical records, though it is not clear which ones.   When asked which records he reviewed and about their origin, he testified "They were the ones given to me. I assume from –I don't know, I had a box in my office."   Nevertheless, he admitted that he does not know what events occurred to constitute the "sink incident" other than "what's in the records" (Doc. 46-1, pp. 62-63, 69).   The medical records give varying descriptions of the sink incident.   For example, the April 2019 MRI report states that Plaintiff "fell" on February 14, 2019, but Plaintiff testified that she did not fall, she "jumped back." (Doc. 42-1, p. 31).

It is not the Court's role to determine whether Dr. Whiting was correct when he initially testified that his "opinion within a reasonable degree of medical certainty is that the injury that [Plaintiff] suffered on February 14th of 2019 is an aggravation of her preexisting condition."   *See Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013).   Instead, the Court is concerned with the "soundness and care" Dr. Whiting used to reach that opinion.   *Id.*, *citing Daubert v. Merrell Down Pharm., Inc.*, 509 U.S. 579, 595 (1993).   After initially giving his opinion regarding the sink incident aggravating Plaintiff's osteoarthritis ("initial opinion"), Dr. Whiting recanted multiple times, ultimately stating that he could not give any opinion about Plaintiff's specific injury.   The Court is unwilling to find that Dr. Whiting's initial opinion was based on sufficient facts and data and reliable principles and methods when Dr. Whiting was unwilling to conclude as such.

Plaintiff argues that Federal Rule of Evidence 703 allows experts to rely on medical records as a basis for their opinions offered at trial, and therefore Dr. Whiting should be allowed to testify "concerning the conditions of Plaintiff's knee" because he reviewed the April 2019 MRI report.[2] Of course an expert may, in many instances, rely upon an MRI report when forming an opinion offered at trial. In this case, however, Dr. Whiting clarified that despite having read Plaintiff's April 2019 MRI report he cannot offer an opinion regarding Plaintiff's specific injury that occurred because of the sink incident.

Dr. Whiting did not treat Plaintiff for any injury related to the sink incident. Plaintiff never discussed the sink incident with him. Dr. Whiting testified that he cannot "give any opinions in this case about [Plaintiff's] specific injury" (Doc. 46-1, p. 79). Accordingly, Dr. Whiting's initial opinion in his deposition regarding the aggravation of Plaintiff's osteoarthritis is unreliable, and the remainder of his testimony is irrelevant. Defendant's Motion to Exclude the testimony of Dr. Whiting is GRANTED.

**Motion for Summary Judgment**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists

---

[2] Plaintiff also argues that the Court should apply Illinois law in determining whether Dr. Whiting's testimony is admissible, as this case is before the court pursuant to diversity jurisdiction. Federal Rule of Evidence 702 and the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.* "govern the admissibility of expert witness testimony" even in cases before the district court on diversity grounds. *Gopalratnam v. Hewlett Packard Co.*, 877 F.3d 771, 778 (7th Cir. 2017) (internal citations omitted). Regardless, Plaintiff then bases the remainder of her argument on Federal Rule of Evidence 703.

when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).  In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).  The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial."  Only admissible evidence can defeat a motion for summary judgment.  *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

Plaintiff must prove, *inter alia*, that Defendant's negligent conduct proximately caused her injuries.  *First Springfield Bank Trust v. Galman*, 188 Ill.2d 252, 256 (1999).  Defendant contends there is no admissible evidence to establish the sink incident caused any injury to Plaintiff other than an abrasion to her thigh.  Expert testimony is necessary to establish the cause of an injury unless the origin of the injury is obvious to a layperson.  *Myers v. Illinois Central R. Co.*, 629 F.3d 639,   643 (7th Cir. 2010).  Plaintiff testified that porcelain shattered from the sink when it fell and "hit me in between my legs."  A layperson could understand that a porcelain sink would shatter into pieces, and the shattering glass could result in cuts or an abrasion to a nearby person's skin.  *See id*.

In response to Defendant's Motion for Summary Judgment, Plaintiff points the Court to portions of Dr. Whiting's deposition testimony, including the initial opinion he gave regarding the aggravation of Plaintiff's osteoarthritis.  As discussed above, Dr. Whiting recanted that opinion and did not survive Defendant's *Daubert* challenge.  Otherwise, Plaintiff provides no admissible

evidence to establish that she was injured by the sink incident (beyond the abrasion).

Summary judgment may be granted on "part of a claim or defense." FED. R. CIV. P. 56(a); *Ford v. Marion Co. Sheriff's Office*, 942 F.3d 839, 849 (7th Cir. 2019).   While a reasonable jury could find that the sink incident caused Plaintiff to suffer an abrasion to her thigh, there is no genuine dispute regarding any other injuries to Plaintiff resulting from the sink incident. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

## CONCLUSION

Defendant's Motion to Exclude Testimony of Plaintiff's Non-retained Expert Dr. Whiting (Doc. 43) is GRANTED.   Defendant's Motion for Summary Judgment (Doc. 41) is GRANTED. Summary judgment is granted in favor of Defendant on Plaintiff's claims for damages other than an abrasion to her left thigh.

**IT IS SO ORDERED.**

**DATED: October 29, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**